The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Pittman. The appealing party has not shown good ground to reconsider the evidence, receive further evidence, rehear the parties or their representatives, or amend the Opinion and Award.
Plaintiff's Motion for Hearing to take Additional Evidence is hereby DENIED.
* * * * * * * * * * *
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing as:
STIPULATIONS
1. All stipulations contained in the aforementioned Pre-Trial Agreement are incorporated herein by reference.
2. A Form 22 prepared by defendant and received into evidence at the time of the hearing as Stipulated Exhibit Number 1.
3. The Industrial Commission Form 19 prepared on April 19, 1993 was received into evidence at the time of hearing as Stipulated Exhibit Number 2.
4. Subsequent to the hearing, the parties stipulated into evidence those medical records identified in and attached to the stipulation of medical records dated September 27, 1994 which were received into evidence as Stipulated Exhibit Number 3.
* * * * * * * * * * *
The Full Commission adopts the findings of fact found by the Deputy Commissioner as follows:
FINDINGS OF FACT
1. At the time of the alleged injury giving rise to this claim, plaintiff, who is a 42 year old high school graduate with some additional vocational training as a bookkeeper, was employed by defendant as a third shift supervisor. Plaintiff had been so employed since approximately October 1990. Plaintiff's job duties as a supervisor included setting up and operating plastic extrusion machines and mixing compounds for use in the machines, which included lifting boxes, buckets and barrels of compound and finished products which weighed from approximately 20 pounds to as much as approximately 130 pounds. Plaintiff performed the aforementioned job duties on a regular and routine basis.
2. Plaintiff alleges that on the third shift of December 17, 1993, at about the middle of the shift, he picked up a barrel of compound weighing between 100 and 130 pounds and made a "slight twisting motion" as he dumped the barrel into a gaylord, and that in doing so he felt a sharp pain in his back.
3. However, plaintiff failed to report this alleged on-the-job injury to either Ed Rudd, defendant's production manager and immediate supervisor or J.D. Stadler, defendant's vice-president of manufacturing and plant manager at that time either on December 17 or December 18, 1992.
4. Plaintiff was on vacation on December 18, 1992 but returned to work on his regular third shift on December 21, 1992 and, except for the Christmas and New Year's holidays and six vacation days, plaintiff regularly worked at his job as third shift supervisor performing his normal work duties through January 30, 1993. The undersigned finds that although plaintiff complained about back and hip pain during this time to Mr. Rudd and Mr. Stadler, as well as to Shelia Varnadore, defendant's administrative assistant responsible for handling workers' compensation and group disability matters, plaintiff did not indicate or report to them an on-the-job injury. When Mr. Rudd noticed plaintiff limping in early January, 1993, he asked plaintiff if he had injured himself. Plaintiff responded that he did not think so, but thought that his problem might be due to an old injury. When Mr. Stadler likewise noticed plaintiff limping in late December, 1992 or early January, 1993 and questioned plaintiff about the nature of his problem, plaintiff told him that he was having a problem with his back, but did not tell Mr. Stadler that he had injured his back while lifting a barrel at work or otherwise. Plaintiff approached Ms. Varnadore in defendant's break room on January 29, 1993 and began talking with her about his back problems. Ms. Varnadore specifically asked plaintiff twice during that conversation whether he had injured his back on-the-job, to which plaintiff responded that he had not, but that he thought it was an old injury.
5. Plaintiff also had a conversation with Pat Phillips, defendant's human resource manager, in late January or early February, 1993, at which time plaintiff discussed his back and right hip problem with Ms. Phillips. Ms. Phillips also asked plaintiff if he had injured his back at work, and plaintiff responded that he had not, but that his problem had been "coming on."
6. Plaintiff received medical treatment from Dr. David A. Rinehart, plaintiff's family physician, on January 11, 1993. Plaintiff complained of two to three weeks of right hip pain and mild back pain, but advised Dr. Rinehart that he did not know of any injury.
7. Plaintiff sought medical treatment from Dr. Thomas K. Fehring at Charlotte Orthopaedic Specialist on January 22, 1993 upon referral by Dr. Rinehart. At that time, plaintiff indicated to Dr. Fehring that his symptoms first appeared on December 27, 1992 and did not give Dr. Fehring a history of onset of symptoms in his back and right hip on December 17, 1992 while lifting a barrel at work.
8. Plaintiff did not return as scheduled to see Dr. Fehring, rather plaintiff next sought chiropractic care from William D. Crawford, D.C., on February 1, 1993. Plaintiff told Dr. Crawford that he did not know what had happened, but that he started having right hip pain, pain in the small of his back and groin pain going down his right leg. While plaintiff at this time stated that he thought it was related to his work, plaintiff again did not tell Dr. Crawford that such pain began after he lifted a barrel at work on December 17, 1992 and plaintiff furthermore related that his hip pain had begun several months previously.
9. Plaintiff sought medical treatment from Dr. J. Eugene Alexander on February 9, 1993 (approximately 8 weeks following his alleged injury). At that time, plaintiff reported to Dr. Alexander that on December 17, 1993 he was lifting a tumbler mixer barrel which weighed approximately 100 to 130 pounds and noticed the onset of low back pain with radiation into his right hip. This was the first time that plaintiff had reported such a history of a work-related injury to either defendant or any treating physician. Dr. Alexander reviewed a CT-scan of plaintiff's lumbar spine, which revealed early degenerative disc disease and joint disease, but not evidence of a slipped disc. Dr. Alexander obtained an MRI of plaintiff's lumbar which revealed no evidence of disc herniation. Conservative treatment continued to be recommended for treatment of plaintiff's complaints; however, following the course of physical therapy, plaintiff related no improvement in his condition. Dr. Alexander subsequently released plaintiff on March 9, 1993 without rendering any opinion as to the cause of plaintiff's back and hip pain.
10. On March 12, 1993, plaintiff returned to see Dr. Fehring who resumed plaintiff's treatment regarding his complaints of right sided radiculopathy. On April 16, 1993, Dr. Fehring first became aware that plaintiff felt his claim should be considered worker's compensation as plaintiff related his complaints to his job duties of mixing compounds and bending. It was approximately three days later on April 19, 1993 when plaintiff first reported his alleged on-the-job injury to defendant-employer. It is also noteworthy that plaintiff had initially reported to Dr. Fehring when plaintiff, himself, filled out the questionnaire on January 22, 1993 that his problems began on December 27, 1992 which was a Sunday, when the plaintiff was not working. It was not until June 1993 that plaintiff notified Dr. Fehring's office that he was claiming that his problems began on December 17, 1992.
11. Plaintiff underwent a micro-diskectomy at L4-5, right, on August 27, 1993. This surgical procedure was performed by Dr. J. Robinson Hicks of Charlotte Orthopaedic Associates. There is insufficient medical evidence of record from which to prove by its greater weight the cause of plaintiff's back and hip complaints, or the cause of the herniated lumbar disc at L4-5 for which plaintiff underwent surgery. Plaintiff failed to carry his burden of proving that his back and right hip problems, or the herniated lumbar disc, were caused by the alleged incident of December 17, 1992.
12. Since said surgery, plaintiff sought medical treatment from Dr. Todd M. Chapman with the Miller Orthopaedic Clinic on January 5, 1994. Dr. Chapman diagnosed plaintiff's condition as degenerative disc disease at the L4-5 and L5-S1 levels without recurrent herniated disc and nerve root scarring. Plaintiff continues to be treated by Dr. Chapman.
13. Since January 30, 1993, plaintiff had not returned to work with defendant-employer nor has plaintiff obtained other employment. Plaintiff does, however, continue to drive an automobile, travel and perform some carpentry work.
14. Plaintiff failed to meet his burden of proving that he sustained any injury by accident arising out of and in the course of his employment with defendant-employer on December 17, 1993.
* * * * * * * * * * *
Based upon the findings of fact, the Full Commission concludes as follows:
CONCLUSIONS OF LAW
1. On December 17, 1992, plaintiff did not sustain a back injury as the direct result of a specific traumatic incident of the work assigned nor did plaintiff sustain a back injury as the result of an injury by accident arising out of and in the course of his employment with defendant. G.S. § 97-2(6).
2. Plaintiff is, therefore, not entitled to benefits pursuant to the provisions of the North Carolina Workers' Compensation Act. G.S. § 97-2 et seq.
* * * * * * * * * * *
Based on the foregoing findings of fact and conclusions of law, the Full Commission affirms the holding of the Deputy Commissioner and enters the following:
ORDER
1. Plaintiff's claim must, under the law, be and is hereby DENIED.
2. Each side shall pay its own costs.
 S/ ________________________ LAURA KRANIFELD MAVRETIC COMMISSIONER
CONCURRING:
S/ ________________________ COY M. VANCE COMMISSIONER
S/ ________________________ BERNADINE S. BALLANCE COMMISSIONER